UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. KRAMER,

       Plaintiff,                            CIVIL ACTION NO. 08-15182

      v.                                   DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF                   MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.*    *Proceedings in this Court*

On December 17, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Supplemental Security Income benefits (Dkt. 3, 12). This matter is currently before the Court on Plaintiff's Motion to Remand and Defendant's Motion for Summary Judgment (Dkt. 14, 17).

    *B.*    *Administrative Proceedings*

Plaintiff filed the instant claims on October 29, 2004, alleging that he became unable to work on November 1, 1998 (Tr. 12, 47). The claim was initially disapproved by the

Commissioner on July 27, 2005 (Tr. 36). Plaintiff requested a hearing and on September 11, 2007, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) John L. Christensen, who considered the case *de novo*. In a decision dated October 1, 2007, the ALJ found that Plaintiff was not disabled (Tr. 9-23). Plaintiff requested a review of this decision on October 11, 2007 (Tr. 8). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1-3, Tr. at 2, 231-247), the Appeals Council, on December 3, 2008, denied Plaintiff's request for review (Tr. at 3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 28 years old at the time of the most recent administrative hearing (Tr. 21). Plaintiff's relevant work history included prior work as a stock clerk (Tr. 21). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

engaged in substantial gainful activity since October 29, 2004 (Tr. 14). At step two, the ALJ found that Plaintiff had the following "severe" impairments: cardiac arrhythmia; depression; anxiety; bipolar disorder; and learning disability. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to "perform light work, but would require a job that would incorporate no driving industrial commercial vehicles, no math, no reading, writing, no climbing ropes, ladders or scaffolds, no exposure to unprotected heights or unguarded hazardous machinery. [Plaintiff] can perform simple routine tasks in a low stress environment, by that I mean with minimal changes in the workplace setting and no more than occasional contact with the general public" (Tr. 16). At step four, the ALJ found that Plaintiff could not perform his previous work as a stock clerk. *Id*. At step five, the ALJ denied Plaintiff benefits because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as hand packager, inspector and bench assembler (Tr. 21-22).

   **B.**  ***Administrative Record***

     **1.**  **Plaintiff's Testimony and Statements**

  Plaintiff testified at the September 2007 hearing that he completed school through the eighth grade and could not read at all or write well and was being tutored for literacy (Tr. 257, 259). Plaintiff stated that he could determine if he had received the correct amount of change (Tr. 259). Plaintiff testified that he lived with his mother in an apartment (Tr. 255). He was able to drive (Tr. 256). At home, Plaintiff cooked, cleaned, and did laundry (Tr. 261).

In January 2005, Plaintiff's mother reported that Plaintiff was able to bathe, do housework, prepare meals, clean, shop for groceries, go hunting, and play cards (Tr. 59-61, 63-65, 79). Plaintiff also drove a car, and was able to pay bills as well as count change (Tr. 80-81).

### 2.    Medical Evidence[2]

In March 1996, Plaintiff underwent evaluation by the school psychologist, Joyce Johnson, Ph.D. (Tr. 104). Dr. Johnson noted Plaintiff's poor attendance in school (Tr. 104). Dr. Johnson administered the Wechsler Adult Intelligence Scale Revised (WAIS-R), on which Plaintiff scored a Verbal IQ of 86, a Performance IQ of 86, and a Full Scale IQ of 85, which classified him in the low average range of intellectual functioning (Tr. 104, 106). On the Woodcock-Johnson Psycho Educational Battery-Revised, Plaintiff had a grade 2.5 level for reading recognition, and grade 3.1 level for passage comprehension (Tr. 105). His writing skills were at the second grade level (Tr. 106). Math calculation skills were at the fifth grade level (Tr. 106).

In September 1996, Plaintiff's Individualized Education Plan (IEP) noted he was eligible for special services due to a learning disability (Tr. 97). Specifically, he required support in reading and writing (Tr. 99).

In May 2005, Plaintiff underwent a consultative mental examination by psychologist Laura Morris, Ph.D. (Tr. 108). Dr. Morris noted Plaintiff's history of panic attacks that apparently started at age 18 when he was hospitalized (Tr. 108). Plaintiff was previously a 12-pack a night drinker but claimed he no longer drank following a DUI (Tr. 109). Plaintiff reported daily activities that included preparing simple meals, shopping for groceries, doing all

---

[2] As Plaintiff's motion for remand only raises issues concerning Plaintiff's mental impairments, only those records dealing with Plaintiff's mental condition will be discussed in this Report and Recommendation.

of his own laundry, and sometimes doing household chores (Tr. 110). Dr. Morris stated a diagnostic impression of depressive disorder and generalized anxiety disorder (Tr. 113). State agency psychologist Joseph Deloach reviewed the medical evidence and opined in June 2005 that Plaintiff did not meet or equal a Listing (Tr. 116). Dr. Deloach opined that Plaintiff had low average understanding and memory, and could perform simple tasks on a sustained basis (Tr. 130).

Plaintiff underwent a second consultative examination in June 2007, by George Pestrue, Ph.D. (Tr. 190). On the WAIS-R, Plaintiff score a Verbal IQ of 73, a Performance IQ of 74, and a Full Scale IQ of 71 (Tr. 196). Dr. Pestrue also administered the Wide Range Achievement Test-IV, on which Plaintiff scored at the grade 1.3 level for word reading and below kindergarten level for sentence comprehension (Tr. 195). His spelling score was at kindergarten level and math computation fell at grade level 2.9 (Tr. 195). Dr. Pestrue opined that these scores indicated "severe" delays in development (Tr. 195).

Dr. Pestrue stated a diagnostic impression of bipolar disorder, social anxiety disorder, panic disorder, and developmental reading and spelling disorder (Tr. 196). He further opined that Plaintiff was within the borderline intellectual functioning range (Tr. 196). Dr. Pestrue concluded that Plaintiff was able to understand and remember one or two step instructions (Tr. 198).

### 3.     Vocational Expert

At the September 2007 administrative hearing, the ALJ asked Vocational Expert (VE) Melody Henry whether any jobs existed for an individual of Plaintiff's age, education, and previous work experience, who was limited to performing light work that precluded driving

industrial or commercial vehicles, climbing of ropes, ladders or scaffolds, or exposure to hazardous machinery or unprotected heights (Tr. 264). Additionally, the hypothetical question assumed that the individual was limited to simple routine, low stress tasks that did not require reading, math or writing (Tr. 264).

Ms. Henry, clarifying that she was identifying jobs that included a marginal level of literacy, meaning first or second grade "functional" illiteracy (Tr. 264). She identified examples of jobs in the state that such an individual could perform: hand packer (2,700); inspector (1,100); and bench assembler (2,250) (Tr. 264-65). The VE testified that the responses she gave generally confirmed with the descriptions stated in the *Dictionary of Occupational Titles* (DOT) (Tr. 265).

### C. *Plaintiff's Claims of Error*

Plaintiff's raises two arguments on appeal: (1) that the ALJ did not adequately specify why Plaintiff did not meet or equal Listing 12.05(C) (Mental Retardation), given that Plaintiff had an IQ of 71 and given that Plaintiff suffered from other mental impairments; and (2) that the jobs listed by the vocational expert did not conform to the *Dictionary of Occupational Titles* (DOT). All other arguments are waived.[3]

### III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination

---

[3] *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) ("Since the attorney at the hearing did not pursue this argument and the argument was not presented to the district court, it appears that the argument has been abandoned.") (citation omitted); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (citation and internal quotation omitted).

for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.")

(quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

  **B.**  ***Governing Law***

  The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II DIB benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI SSI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. Analysis and Conclusions

As stated earlier, Plaintiff raises two issues on appeal: (1) that the ALJ failed to specify why Plaintiff did not meet or equal Listing 12.05(C) (Mental Retardation), given that Plaintiff had an IQ of 71 and given that Plaintiff suffered from other mental impairments; and (2) that the jobs listed by the vocational expert did not conform to the *Dictionary of Occupational Titles* (DOT).

#### 1. Listing 12.05(C) (Mental Retardation)

Plaintiff asserts that the ALJ erred in finding that he did not have an impairment that met or equaled Listing 12.05(C) (Mental Retardation). Specifically, he contends that the ALJ failed to articulate his rationale for finding that Plaintiff did not meet or equal Listing 12.05(C).

The third step states, in pertinent part, "[i]f you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 416.920(a)(4)(iii). A finding of "disabled" will be made at the third step if Plaintiff can demonstrate that his impairment meets the durational requirement and "meets or equals a listed impairment." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (quoting 20 C.F.R. § 404.1520(d)). In order to meet the requirements of a listed impairment, Plaintiff must meet all of the elements of a listing. *See*

*Hale v. Sec'y of Health and Human Servs*., 816 F.2d 1078, 1083 (6th Cir. 1987). It is not sufficient to come close to meeting the requirements of a listing. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Agency decision affirmed where medical evidence almost established disability under a listing).

Subpart 12.05 defines "mental retardation" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Subpart 12.05 contains four criteria. A claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added). Plaintiff argues that his case falls within criterion (C): "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

In March 1996, Joyce Johnson, Ph.D. administered the Wechsler Adult Intelligence Scale Revised (WAIS-R), on which Plaintiff scored a Verbal IQ of 86, a Performance IQ of 86, and a Full Scale IQ of 85. Plaintiff underwent a second consultative examination in June 2007, by George Pestrue, Ph.D. (Tr. 190). On this WAIS-R, Plaintiff scored a Verbal IQ of 73, a Performance IQ of 74, and a Full Scale IQ of 71 (Tr. 196). Thus, Plaintiff's lowest IQ score was 71, which is higher (albeit by one point) than the range of IQ scores necessary to satisfy listing 12.05(C). Plaintiff is essentially arguing that his IQ score is "close enough," and that he should qualify for Listing 12.05(C) given that he has other mental limitations. Plaintiff's argument is

without merit. *See Ellison v. Sullivan*, 929 F.2d 534 (10th Cir. 1990) (finding that claimant's verbal IQ of 72 did not satisfy the two-part test of Listing 12.05(C)). Several courts that have considered similar "margin of error" arguments with respect to Listing 12.05(C) have rejected it. *See Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991) (standard error range should not be factored into Listing 12.05(C)'s IQ score because the Commissioner was entitled to rely on the plain language of the regulation); *Newland v. Apfel*, No. 97-4339, 1999 WL 435153, at **6 (6th Cir. June 17, 1999) (IQ of 72 at issue – holding that the claimant is not entitled to "margin of error" because Social Security regulations do not provide for functional equivalency when test scores are specified) (unpublished disposition); *Bennett v. Bowen*, No. 88-3166, 1989 WL 100665, at **4 (4th Cir. Aug. 28, 1989) (rejecting the claimant's margin of error argument, characterizing it as an assertion that "'close counts in horseshoes' as well as the Listings") (unpublished disposition); *see also Cockerham v. Sullivan*, 895 F.2d 492, 495 (8th Cir. 1990) (holding that the claimant's IQ score of 71 could not be liberally construed to meet the requirements in Listing 12.05(C)).

      The regulations do not indicate that errors of measurement should be taken into consideration in determining whether an individual satisfies a limitation criteria. Incorporating a margin of error into a claimant's IQ test results "would effectively expand the requisite IQ under [L]isting 12.05(C) . . . [and] would alter the range of IQs which satisfy [Listing 12.05(c)] in contradiction of the federal regulations interpreting the Act." *Bendt v. Chater*, 940 F. Supp. 1427, 1431 (S.D. Iowa 1996). Thus, the undersigned finds that the ALJ was not obligated to take into consideration a margin of error in applying Listing 12.05(C) and that his finding that

Plaintiff did not qualify under Listing 12.05(C) was supported by substantial evidence on the record, as it is undisputed that Plaintiff's IQ was above the range set forth in Listing 12.05(C).

The undersigned also finds no merit in Plaintiff's contention that the ALJ did not adequately articulate his rationale for determining that Plaintiff failed to meet Listing 12.05(C). The ALJ's decision included an extensive discussion of the medical evidence concerning Plaintiff's mental impairments, and indicates that the ALJ expressly considered the applicability of Listing 12.05(C) (Tr. 14-15, 17-18, 20). Courts have been reluctant to impose a strict articulation standard on ALJs at step three. *See Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) (minimal articulation required at step three). In sum, substantial evidence supports the ALJ's step three finding, which was also adequately articulated.

## 2. Dictionary of Occupational Titles

Plaintiff also contends that the ALJ erred in relying on the VE's testimony about jobs that Plaintiff could perform. Specifically, Plaintiff contends that the VE cited to job descriptions contained in the *Dictionary of Occupational Titles* (DOT), and that those jobs required a literacy level exceeding his abilities. *See* Pl.'s Br. at 7. Plaintiff thus attempts to characterize the VE's testimony as conflicting with the DOT. Plaintiff's argument is unavailing.

Plaintiff's educational testing in 1996 revealed that, on the Woodcock-Johnson Psycho Educational Battery-Revised, Plaintiff had a grade 2.5 level for reading recognition, and grade 3.1 level for passage comprehension (Tr. 105). His writing skills were at the second grade level (Tr. 106). Math calculation skills were at the fifth grade level (Tr. 106). Plaintiff had a learning disability in reading, but completed school up to the 11th grade (Tr. 97, 104). The record evidence further indicates that he drove a car (indicating he could pass the written driver

examination), and was able to pay bills as well as count change (Tr. 80-81). This evidence cumulatively demonstrates that he had some reading and writing ability.

At the hearing, the ALJ asked the VE to consider a hypothetical question that assumed, inter alia, that the individual could not perform jobs requiring math, reading, or writing (Tr. 264). In response, the VE clarified that she had identified jobs in Michigan that assumed a marginal first or second grade education, meaning "basically equivalent to functional illiteracy" (Tr. 264). Thus, the VE made clear that she was citing to examples of jobs that required very little reading or writing skills. She also stated that her testimony "generally" conformed to the descriptions in the DOT (Tr. 265). Moreover, she clarified that the jobs she was identifying were unskilled (Tr. 266). An individual's literacy level is of little relevance for unskilled work, which relates to working with things rather than data or people. See 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00 (I). Thus, the VE's testimony expressly addressed the literacy concerns and accounted for the erosion of the job base resulting from literacy limitations (Tr. 264). The Court finds that the VE's testimony did not result in unresolved inconsistencies with the DOT.

In sum, after review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion to remand be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  January 14, 2010

### CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 14, 2010.*

*S/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*